UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22429-Civ-WILLIAMS/TORRES

RHONDA HOLCOMB,

    Plaintiff,

v.

CARNIVAL CORPORATION, and
RUNNERS ADVENTURES d/b/a
MONKEY JUNGLE & DOMINICAN FLAVORS,

    Defendants.

_____/

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Carnival Corporation's ("Defendant" or "Carnival") motion to dismiss [D.E. 8] Rhonda Holcomb's ("Plaintiff") complaint. [D.E. 8]. Plaintiff responded on September 14, 2020 [D.E. 14] to which Carnival replied on September 29, 2020. [D.E. 17]. Therefore, Carnival's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Carnival's motion to dismiss should be **DENIED**.[1]

---

[1]     On September 4, 2020, the Honorable Kathleen Williams referred Carnival's motion to the undersigned Magistrate Judge for disposition. [D.E. 10].

## *I. BACKGROUND*

Plaintiff filed this action on June 12, 2020 [D.E. 1] for injuries sustained onboard the *Carnival Sensation* while participating in a shore excursion. Plaintiff alleges that, on April 1, 2019, she boarded Carnival's vessel with a stop scheduled for the Dominican Republican. As part of her itinerary, Plaintiff purchased tickets to participate in a shore excursion known as the Monkey Jungle. This excursion allowed passengers to interact with monkeys in an arena and, as a safety precaution, it required passengers to remove any jewelry beforehand and to wash/clean their shoes in a metal trough that was filled with disinfectant and soap. Plaintiff listened attentively to the safety briefing when she arrived for the excursion and she washed her tennis shoes when she was instructed to do so.

After exiting the trough, neither Carnival nor its agent, Runners Adventures ("Runners"), provided any means for passengers to dry their shoes. Passengers then began to descend a flight of stairs into the arena and Plaintiff was the last participant in her group. While doing so, Plaintiff discovered that the stairs were excessively slippery because of previous passengers who descended before her. Plaintiff's shoes were also soaking wet with soap and disinfectant because neither Carnival nor Runners provided passengers with any drying agents. When Plaintiff descended onto the second step, she slipped and fell down the stairs. She fell on her right side, injuring her wrist, elbow, and leg.

Plaintiff requested immediate medical attention and staff members came to her aid. They helped Plaintiff off the staircase, placed her into a chair, and took her

back to Carnival's vessel. Once onboard the vessel, Plaintiff visited the medical center but Carnival's personnel turned her away because there were more serious injuries that required more immediate attention. After visiting the excursion desk and learning that the medical center had closed, a nurse took a look at Plaintiff's injuries. However, the nurse improperly splinted Plaintiff's wrist and failed to clean the laceration on her leg. The nurse instead applied glue to the wound and covered it with a bandage. Plaintiff also did not receive any antibiotics or a tetanus shot. When Plaintiff arrived back to the United States, she visited a county hospital where medical personnel diagnosed her with a deep abrasion to her right leg and a fracture to her right arm. Because Carnival and Runners were both negligent for the injuries Plaintiff sustained, she filed an eight-count complaint for damages, interest, and costs.

## II. APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.; *see also Edwards v. Prime, Inc.*, 602 F.3d

3

1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III. ANALYSIS

Carnival's motion seeks to dismiss counts one (negligence), two (negligent selection and retention), six (joint venture), and seven (breach of a non-delegable duty) in Plaintiff's complaint because they each fail to state a claim. Plaintiff opposes Carnival's motion in all respects because the complaint includes the

necessary allegations to survive a motion to dismiss. Plaintiff suggests that Carnival is attempting to hold her to a higher standard while demanding that she plead more specific facts or present evidence that is customarily required to oppose a motion for summary judgment. Because Carnival is wrong on both the facts and the law, she concludes that the motion must be denied. Before we turn to the merits, we must consider the principles of general maritime law to inform the analysis that follows.

### A. *Principles of General Maritime Law*

Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989). Absent an applicable statute, general maritime law is "an amalgam of traditional common-law rules, modifications of those rules and newly created rules" drawn from state and federal sources. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65 (1986). Maritime law may be supplemented by state law principles so long as application of the state law does not place "substantive admiralty principles" at risk. *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1426 (11th Cir. 1997); *see also Yamaha Motor Corp., U.S.A., v. Calhoun,* 516 U.S. 199, 210 (1996); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953). Given these general maritime principles, we consider the parties' arguments in turn.

5

B.  *Direct Negligence (Count 1) and Negligent Selection and Retention (Count 2)*

Plaintiff alleges two theories of liability in counts one and two: direct negligence and negligent selection and retention. Carnival argues that both counts should be dismissed because Plaintiff failed to allege that it was on actual or constructive notice of any risk creating condition that led to her injuries. That is, Carnival reasons that Plaintiff's allegations are generic, formulaic, and fail to include any specific facts as to how it was on notice. Carnival takes issue, for example, with the allegation that "[t]he industry has been plagued with shore excursion injuries, which Carnival, and industry leader, knows and should reasonably know under the circumstances." [D.E. 1 at ¶ 55(a)(ii)]. Carnival suggests that this says nothing on how it could have had notice of a dangerous condition involving Runners or the shore excursion. And even worse, Carnival asserts that Plaintiff is trying to allege notice with the use of other excursions run by different tour operators in other parts of the world. Because Plaintiff's allegations are conclusory, lack any specific facts, and fail to show that Carnival had notice of any negligent operation of the Monkey Jungle shore excursion, Carnival concludes that counts one and two must be dismissed. *See*, e.g., *Polanco v. Carnival Corp.*, 2010 WL 11575228, at *3 (S.D. Fla. Aug. 11, 2010) (granting motion to dismiss because there were "no details about how long Carnival knew of the negligent operation of the motor vehicle on the excursion, or how it was that Carnival knew or should have known about such negligent operation. There are also no details about the similar past incidents that Carnival allegedly failed to

6

investigate."); *Isbemer v. Celebrity Cruises, Inc.,* 2006 WL 4005565, *4 (S.D. Fla. 2006) (dismissing negligence claim against cruise line without prejudice because the allegations – that the cruise line failed to investigate whether the excursion operator was qualified, and that operator had a poor reputation and had prior claims against it – were too vague and conclusory).

The basic elements of a claim for negligence under general maritime law are the same as at common law. *See Whelan v. Royal Caribbean Cruises Ltd.,* 2013 WL 5583970, at *2–3, 2013 U.S. Dist. LEXIS 147811 *7–8 (S.D. Fla. Aug. 14, 2013). A plaintiff must prove that: (1) the defendant had a duty to protect the plaintiff from a particular injury, (2) that the defendant breached that duty, (3) that the defendant's breach was the proximate cause of the plaintiff's injuries, and (4) that the plaintiff suffered damages as a result of said injuries. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1336 (11th Cir. 2012). With respect to the duty element in a maritime context, "a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630 (1959). This standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of [a] risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322.

To establish a claim for negligent hiring or retention against a vessel owner, a plaintiff must establish that the excursion company "was incompetent or unfit to

perform the work, that the [vessel owner] knew or reasonably should have known of the particular incompetence or unfitness, and that such incompetence or unfitness proximately caused [her] injuries." *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1339 (S.D. Fla. 2016) (quoting *Gayou v. Celebrity Cruises, Inc.*, 2012 WL 2049431, at *5 (S.D. Fla. June 5, 2012)). "The relevant inquiry is whether [the cruise line] diligently inquired into [the tour operator's] fitness." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1319 (S.D. Fla. 2011). Similar to direct negligence, "the employer must be charged with knowledge of the employee or independent contractor's unfitness *after* they are hired." *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1335 (S.D. Fla. 2019), *Report and Recommendation adopted*, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019) (emphasis in original) (citing *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016) ("Liability for negligent retention occurs after employment begins, where the employer knows or should have known of the employee's unfitness, and fails to take further action such as investigating, discharge or reassignment")).

Carnival states that neither count one or two is viable because the allegations of notice are too conclusory and generic to state a claim. But, Carnival selectively targets the most generic allegations in the complaint to make it appear that the complaint's allegations are insufficient. Carnival argues, for instance, that Plaintiff's allegations of the cruise line industry being plagued with shore excursion injuries is insufficient to state a claim for either direct negligence or negligent selection/retention. If that were the only allegation in Plaintiff's complaint,

8

dismissal would be appropriate because there would be nothing that presents facts relevant to *this excursion*. *See, e.g., Gayou*, 2012 WL 2049431, at *5 (dismissing plaintiff's claim because the elements of negligent hiring or retention were not supported by any relevant facts); *Ferretti v. NCL (Bahamas) Ltd.*, 2018 WL 1449201, *4 (S.D. Fla. 2018) (same).

Yet, the complaint includes many more allegations than Carnival suggests. Plaintiff alleges that Carnival (1) visited and participated in the Monkey Jungle excursion, (2) knew of the excursion's dangerous conditions, (3) observed how passengers disinfected their shoes and walked down a soapy staircase, (4) received guest feedback and complaints about the conditions of the Monkey Jungle excursion, and (5) knew of prior injuries resulting from the tour operator's negligence. [D.E. 1 at ¶ 55(a)]. Plaintiff further alleges that Carnival had constructive knowledge because the watery, soapy staircase existed for an extended period of time and that Carnival should have known of these dangerous conditions long ago. *Id.* at ¶ 55(b). And, of course, "[a] maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)).

Based on these allegations, Plaintiff has alleged enough facts that Carnival was on notice of the risk-creating condition because not only did the negligence occur for a protracted amount of time, but she also claims that Carnival personally

9

visited the excursion to observe passengers disinfecting their shoes and walking down a watery and soapy staircase. These allegations are further supported with claims that guests made complaints to Carnival and left feedback on the dangerousness of the excursion. That is, unlike the cases that Carnival relies upon, Plaintiff included specific facts on how Carnival was personally aware of the dangerous condition and yet failed to take any remedial action despite information provided from prior passengers. To the extent Carnival seeks additional specifics on how it was on notice, those facts can be acquired in discovery as "a personal injury plaintiff is often unaware of specific facts demonstrating that the defendant knew or should have known of a dangerous condition at the time the lawsuit is filed, before taking discovery." *Ash v. Royal Caribbean Cruises Ltd.*, 2014 WL 6682514, at *6 (S.D. Fla. Nov. 25, 2014). Thus, at this point in the litigation, there is nothing else required for a plaintiff to state a claim for direct negligence and negligent retention/selection and, for these reasons, Carnival's motion to dismiss counts one and two should be **DENIED**.[2]

### C. *Joint Venture (Count 6)*

Plaintiff alleges in count six that Carnival is vicariously liable for the negligence of the excursion operator because the two entities were engaged in a

---

[2] Carnival suggests in its reply that count two should be dismissed for a separate reason because Plaintiff failed to specify *when* Carnival failed to investigate the tour operator. *See, e.g.*, *Woodley v. Royal Caribbean Cruises, Ltd.*, 2020 WL 3967765, at *6 (S.D. Fla. July 14, 2020) ("Plaintiffs alleged that RCCL failed 'to conduct an adequate and proper investigation' of OIC, but do not specify whether that failure to investigate took place prior to the hiring of OIC."). While it is true there is no specific allegation as to when Carnival failed to investigate, a fair reading of the complaint and all the allegations presented show that the negligence occurred both before and after Carnival hired the tour operator.

10

joint venture. Although there is technically no cause of action for joint venture, Plaintiff's claim should be construed as an alternative theory for negligence liability. *See Ash*, 2014 WL 6682514, at *8 ("There is no cause of action for 'Joint Venture,' but, as with Count III, it is clear from review of the substance of the count that Plaintiffs' Count IV simply advances another alternative theory for *negligence* liability"). A joint venture theory of negligence liability requires a plaintiff to plead facts showing: "(1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter of the venture; (4) a right to share in profits; and (5) a duty to share in any losses which may be sustained." *Lapidus v. NCL Am. LLC*, 2012 WL 2193055, at *6 (S.D. Fla. June 14, 2012) (citing *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir. 1990)). Importantly, these elements are treated as "only signposts, likely indicia, but not prerequisites" to stating a claim. *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria,* 935 F.2d 208, 211 (11th Cir. 1991)).

Carnival argues that count six should be dismissed with prejudice because of a tour operator agreement ("TOA") between Carnival and the excursion operator. The TOA states, in relevant part, that Carnival's relationship with the excursion operator is only that of an independent contractor and that there is no intent to establish a joint venture:

> OPERATOR's relationship with CARNIVAL during the term of this agreement shall be that of an Independent Contractor. OPERATOR shall not have, and shall not represent that it has, any power, right or authority to bind CARNIVAL or to assume or create any obligation of responsibility, express or implied, on behalf of CARNIVAL or in CARNIVAL's name. Nothing related in this agreement shall be

11

> construed as constituting OPERATOR and CARNIVAL as partners, or as treating the relationships of employer and employee, franchisor and franchisee, master and servant or principal and agent or joint venturers between the parties hereto.  OPERATOR shall not represent, communicate or imply in any advertising, literature, announcement or by any other means that it is anything other than an Independent Contractor.

[D.E. 8-3 at ¶ 12].  Because the TOA undermines any possibility that Carnival and Runners worked as a joint venture, Carnival concludes that count six should be dismissed with prejudice.

It is undisputed that the TOA states that Carnival and the excursion operator did not agree in writing to operate as a joint venture.  Carnival reasons that this should be the end of the inquiry and that count six should be dismissed.  But, a court's review at the motion to dismiss stage is generally limited to the four corners of the complaint with the only exception occurring when: (1) a plaintiff refers to a document in the complaint; (2) the document is central to its claim; (3) the document's contents are not in dispute; and (4) the defendant attached the document to its motion to dismiss.  *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007) (internal citation omitted).

Here, the TOA does *not* meet this exception because the complaint never makes reference to the TOA.  The complaint only states that Carnival and Runners entered "into an agreement where Carnival would sell the subject Monkey Jungle excursion to its passengers and Runners and/or Monkey Jungle would operate said excursion." [D.E. 1 at ¶ 83].  Whether this "agreement" is the same as the TOA is unclear and we have no basis to make that conclusion on a motion to dismiss

because a joint venture, similar to a partnership, can be created by express or implied contract. *See Williams v. Obstfeld,* 314 F.3d 1270, 1275-76 (11th Cir. 2002).

The exception is also inapplicable because the TOA is not central to Plaintiff's claims. Instead, Plaintiff's complaint is based on theories of tort liability – meaning this "agreement" is not so much essential to Plaintiff's allegations as it is to Carnival's defenses. *See, e.g., Gentry v. Carnival Corp.*, 2011 WL 4737062, at *5 (S.D. Fla. Oct. 5, 2011) ("Gentry does not assert any breach of contract claims against Carnival. Instead, she asserts claims based on tort theories. As such, the ticket contract is not essential or integral to her claims, rather, it is part of Carnival's defenses."). And even putting aside both of these problems, any reliance on the TOA at the motion to dismiss stage would be inappropriate for an additional reason because Plaintiff calls into question the authenticity of the agreement, making it more uncertain as to whether the TOA is the operative agreement and whether it was in effect at the time of Plaintiff's injury.

Although Carnival did not argue that Plaintiff failed to allege all the elements of a joint venture claim, it probably omitted doing so because a review of the complaint shows that each of them is present. The complaint includes, for example, allegations on joint control over the excursion, shares in the excursion's profits and losses, and an ownership interest in the tour operation. [D.E. 1 at ¶¶ 83-96]; *cf. Brown v. Carnival Corp., et al.*, 202 F. Supp. 3d 1332, 1341 (S.D. Fla. 2016) (granting motion to dismiss joint venture claim because "[t]here are no factual allegations to support Plaintiff's contention that Carnival and the Defendant Tour

13

Operators had any interest in a common purpose, had joint control or right to control, had a right to share in the profits, or a duty to share in any losses."). Because these allegations are sufficient to state a joint venture claim and the relevancy of the TOA is an issue more appropriately considered on either a motion for summary judgment or at trial, Carnival's motion to dismiss count 6 should be **DENIED**.

### D.     *Breach of a Non-Delegable Duty (Count 7)*

The final issue is whether Plaintiff has adequately stated a claim for breach of a non-delegable duty. Plaintiff alleges that Carnival "breached its non-delegable contractual and/or tort duty to provide a reasonably safe excursion" and that she now suffers from various ailments, including bodily injuries, pain and suffering, and a loss of capacity in the enjoyment of life. [D.E. 1 at ¶¶ 101-102]. Carnival argues this count should be dismissed because, under general maritime law, a plaintiff can only state a claim for the breach of a non-delegable duty if "the ship owner executes a contractual provision that guarantees safe passage." *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1372 (S.D. Fla. 2005) (citing *Hass v. Carnival Cruise Lines, Inc.*, 1986 WL 10154, at *1 (S.D. Fla. Mar. 20, 1986) (stating that a ship owner can be liable for breach of contract of safe passage if it executes such a contractual provision)). Carnival further states that this contractual duty "must arise explicitly" and – given Plaintiff failure to identify any contract in her complaint – Carnival reasons that count seven cannot stand. *Hass*, 1986 WL 10154, at *1.

The main problem with Carnival's argument is that it relies on a rule that

14

does not apply in this case.  The rule Carnival references prohibits a passenger from holding a cruise line liable for the breach of a ticket contract unless "there is an express provision . . . guaranteeing safe passage." *Doonan,* 404 F. Supp. 2d at 1372–73.  "The law developed in this way to ensure that passengers aboard vessels could not sidestep the warranty of seaworthiness by asserting breaches of various implied contractual duties."  *Witover,* 161 F. Supp. 3d at 1145 (citing *Hass, Inc.,* 1986 WL 10154, at *1).

Carnival – like many other defendants before it – is trying to use this rule and extend it to shore excursion contracts.  But, courts in our district have repeatedly rejected that argument.  Take, for instance, Judge Lenard's decision in *Witover,* where she held that an express provision guaranteeing safe passage is *not* required to state a claim for the breach of a shore excursion contract.  She explained that there is a fundamental difference between contracts for carriage and shore excursion contracts and "that while concerns related to the doctrine of seaworthiness may limit causes of action for breach of a contract for carriage, such a limitation does not apply to a claim for breach of a shore excursion contract." *Witover,* 161 F. Supp. 3d at 1145 (citing *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 470 n. 8 (5th Cir. 1976) ("[T]he unseaworthiness remedy is not available for injuries which occur on shore during the loading or unloading process and which are not caused by a vessel on navigable water."); *Harling v. United States,* 416 F.2d 405, 406 (9th Cir. 1969) ("The doctrine of unseaworthiness does not extend to injuries caused by instrumentalities ashore."); *Kent v. Shell Oil Co.,* 286 F.2d 746, 752 (5th

Cir. 1961) ("Where the injuries are sustained wholly ashore and are caused by a thing not a part of a vessel or its appurtenances, the failure or deficiency of such facility is not deemed either to constitute unseaworthiness or give rise to any recovery under the doctrine of seaworthiness.")).

Since *Witover*, district courts have allowed complaints to survive a motion to dismiss "where an excursion contract, entered into by a shipowner and a passenger, is alleged to include some sort of guarantee or assurance[.]"  *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302, 1309 (S.D. Fla. 2019) (citing *Lienemann v. Cruise Ship Excursions, Inc.,* 2018 WL 6039993, at *8 (S.D. Fla. Nov. 15, 2018) (denying dismissal for failure to state a claim where the passenger alleged the shipowner "promise[d] . . . its contracted-for excursions utilized the best local providers at every p[o]rt" and "vouch[ed] for the safety/insurance record of the party with whom it independently contracted") (quotation altered for clarity); *Witover*, 161 F. Supp. 3d at 1146 (finding passenger's allegation that shipowner orally "guarantee[d] . . . the excursion was handicapped accessible . . . sufficient to survive a motion to dismiss")).  Carnival's cases are therefore inapposite because, when there is a shore excursion contract, the doctrine of seaworthiness does not require an allegation of an express contractual provision guaranteeing safe passage.

In light of this distinction, Carnival contends that dismissal is still appropriate because the ticket contract rejects any duty to provide passengers with a reasonably safe excursion.  [D.E. 8-5 at ¶ 11(a) ("Guest agrees that Carnival assumes no responsibility, does not guarantee performance and in no event shall be

16

liable for any negligent or intentional acts or omissions, loss, damage, injury or delay to Guest and/or Guest's baggage, property or effects in connection with said services")]. Carnival's argument is again unpersuasive because – even if Carnival limited its liability in the shore excursion contract – Plaintiff alleges that she and Carnival agreed to orally modify that contract to ensure a safe excursion. [D.E. 1 at 100 ("Carnival and Plaintiff agreed to orally modify the excursion contract based upon Carnival's promises that its contracted-for excursions utilized "the best local providers at every port of call" and by virtue of RCCL vouching for the safety/insurance record of the party with whom it independently contracted (Runners/Monkey Jungle).")]. And that allegation, if true, could either undo or supersede the language in the ticket contract to impose liability on Carnival, making it inappropriate to dismiss this claim at this stage of the litigation. *See Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d at 1146 ("[E]ven if Celebrity is correct that the terms of the shore excursion contract limit its general liability, Plaintiff's allegations that said contract was orally modified to include a guarantee that the excursion was handicapped accessible are sufficient to survive a motion to dismiss.").

Whether Plaintiff can ultimately prove her theories of liability is a question of fact and one that we need not reach in the disposition of Carnival's motion to dismiss. Accordingly, Carnival's motion to dismiss count seven should be **DENIED**. *See Lienemann*, 2018 WL 6039993, at *8 (denying motion to dismiss because "[w]hether Plaintiff will ultimately be able prove her theories of how Carnival

17

breached the non-delegable duty arising out of the Shore Excursion Contract" is a matter that should be reserved for later in litigation).

## *IV. CONCLUSION*

For the foregoing reasons, the Court **RECOMMENDS** that Carnival's motion to dismiss [D.E. 8] be **DENIED**.[3]

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the pzarties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

---

[3] Carnival suggests in one conclusory sentence that count seven should be dismissed because "shipowners are not the all-purpose insurers of their passengers' safety." [D.E. 8 at 10]. While there is some support for Carnival's argument (to the extent the Court can fill in the gaps), we decline to give this much consideration because Carnival failed to offer any specifics in support of its position. Carnival merely referenced several cases and concluded that count seven should be dismissed. We note, however, that even if we reached the merits of this argument, district courts have largely rejected Carnival's position after the Eleventh Circuit's decision in *Wolf v. Celebrity Cruises, Inc.*, 683 Fed. App'x 786, 794 (11th Cir. 2017). There, the Eleventh Court stated that the "duty to exercise reasonable care under the circumstances . . . includes 'a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit.'" *Id.* (citing *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1233 (11th Cir. 2014)). The Court did not state, as Carnival implies, that the duty to warn was the "only" duty owed to a passenger while on shore. Therefore, even if we reached the merits of this argument, it would not change the disposition of the motion to dismiss.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 6th day of October, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge